IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Zachary Lester, et al.,            :

       Plaintiffs,            :     Case No. 2:11-cv-00850

   v.            :

Wow Car Company, Ltd.,            :     JUDGE EDMUND A. SARGUS, JR.
et al.,                               Magistrate Judge Kemp
                    :

       Defendants.

OPINION AND ORDER

    This matter is before the Court to consider defendants'
joint motion to quash the subpoena and/or for a protective order.
(Doc. #81).  For the reasons set forth below, the motion will be
denied.

I. Background

    This case involves a dispute over the purchase of a used car
by plaintiffs Zachary and Brandi Lester.  The Lesters returned
the car to the seller twice within the first week they owned it,
and the engine blew six days after the purchase.  As a result of
these events, the Lesters filed a lawsuit in the Court of Common
Pleas for Knox County, Ohio, which was removed to this Court on
September 21, 2011.  The Lesters filed an amended complaint on
July 31, 2012, and a second amended complaint on August 26, 2013.

    There has been considerable debate in this case concerning
who actually sold the car to the Lesters.  It appears to be
defendants' position that the Lesters bought their car from Amy
Hartzler, who was operating Wow Car Company as a dba.  However,
the Lesters claim that Amy Hartzler and Max R. Erwin, Sr., who,
they claim have both a business and a personal relationship,
operated Wow Car Company as a joint venture and that the two of
them either created or maintained other businesses for the
purpose of shielding that joint venture from liability.  More

specifically, they claim that Mr. Erwin owned or operated Wow Car Company, Ltd. ("Wow Ltd."), Wow's eventual successor, and a company called Marmax Enterprises LLC ("Marmax") as an alter ego for Wow and Wow, Ltd. and that he used that company to purchase inventory for the Wow businesses. The Lesters also allege that Ms. Hartzler owns Mid-Ohio Motor Funding Group, Ltd., which provides funding to another business owned by Ms. Hartzler, the Hartzler-Erwin Group LLC. The Lesters claim that the Hartzler-Erwin Group LLC is also used to operate Wow and is an alter ego for Wow and Wow Ltd.

Consistent with the Lesters' theory that Ms. Hartzler and Mr. Erwin are using other entities for the purposes of escaping liability, the Lesters filed a second amended complaint against a number of defendants including Ms. Hartzler dba Wow, Wow Ltd., Mr. Erwin dba Wow, Mid-Ohio Motor Funding Group, Ltd., the Hartzler-Erwin Group LLC, and Marmax. In that complaint (Doc. 80), the Lesters have pleaded claims for breach of an express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, deceptive trade practices, violations of the Truth in Lending Act, violations of the Ohio Consumer Sales Practices Act, and alter ego. On September 9, 2013, defendants moved to dismiss portions of the second amended complaint; that motion is still pending.

On August 23, 2013, the Lesters served a subpoena on a non-party The Home Loan Savings Bank ("Home Loan"). That subpoena asked Home Loan to produce

Copies of the following documents for all accounts bearing the signatory authority of, or in the name(s) of:

a) Amy Hartzler;
b) Max R. Erwin, Sr.;
c) Wow Car Company;
d) Wow Car Company, Ltd.;

-2-

            e) Mid-Ohio Motor Funding Group, Ltd.;
            f) The Hartzler-Erwin Group, LLC; and
            g) Marmax Enterprises, LLC.

     1. Documents pertaining to all open or closed checking, savings, or other deposit or accounts in the name of or under signature authority of any of the named parties or entities, including but not limited to:

          a. Signature cards;
          b. Articles of Incorporation;
          c. Articles of Organization;
          d. Bank statements for the period January 1, 2010 through the present;
          e. Applications to open bank accounts, whether approved or denied, and any supporting documentation submitted with said applications; and
          f. Applications to open accounts for credit, whether approved or denied, and any supporting documentation submitted with said applications.

     2. Records of communications you have for each of the named parties and entities.

(Doc. #81, Ex. A). On September 5, 2013, defendants filed a joint motion to quash the subpoena served upon Home Loan "and/or for a protective order forbidding the disclosure or discovery of the requested bank documents." Id. at 1. In the motion, defendants argue that "[t]here are simply no relevant banking records related to the sale of the car that have not already been produced," and that the Lesters' attempt to obtain the information is "nothing short of harassment" and "most certainly not an effort to obtain evidence relevant to this case." Id. at 5-6 (emphasis in original). Defendants likewise argue that the Lesters should not obtain the information in connection with their joint venture claim, because the required elements "are wholly absent from plaintiffs' complaint." Id. at 6. Similarly, defendants assert that the alter ego claim is premature and can

-3-

only be asserted if liability is first established against the principal parties.  Id. at 7.  In sum, defendants contend that the requested discovery is a "fishing expedition" and that the subpoena should be quashed or a protective order should be issued to prevent the Lesters from obtaining the discovery.  Id. at 8. Finally, defendants contend that the subpoena violated Fed. R. Civ. P. 26(d) because "there has been no conference of the parties related to the Lesters' second amended complaint" and "four of the Defendants" have not "been officially served with a copy of the second amended complaint yet."  Id. at 9.

In their opposing memorandum, the Lesters construe the basis for defendants' motion to be their (erroneous, according to the Lesters) belief that the "joint venture and alter ego allegations . . . are subject to dismissal." (Doc. #87 at 2).  The Lesters dispute that, of course, and they argue that as long as the claims remain part of the case, the defendants have identified "no justifiable reason" to quash the subpoena or issue a protective order.  Id. at 2-3.  According to the Lesters, the banking records are discoverable because they are relevant to the joint venture, alter ego, and successor liability allegations in the second amended complaint.  Id. at 4.  Further, the Lesters allege that they have done all of the conferring required by Fed. R. Civ. P. 26(f) and are entitled to pursue discovery even as it relates to new parties to the case.

In their reply memorandum, defendants reiterate their position that it is "unfair to subject [them] to highly intrusive prying . . . into their personal and business affairs before Plaintiffs have obtained a judgment on Hartzler, the only person who could possibly found to be primarily liable. . . ." (Doc. #92 at 2-3).  Alternatively, they argue that the Lesters have not shown that the documents sought are relevant to any of their claims.

-4-

## II. Discussion

The Court first addresses defendants' argument that the subpoena was issued in violation of Fed. R. Civ. P. 26(d).  Rule 26(d) provides that discovery may not ordinarily begin prior to the Rule 26(f) conference.  In this case, the Rule 26(f) report reflects that counsel for both sides met and conferred on May 8, 2012.  (Doc. #27).  The rule does not require a second or a third conference to be held subsequent to the filing of an amended complaint even if it joins new parties.  Defendants have not cited any cases which imply such a requirement or suggest that every time a new party is added, discovery must stop until that party appears and participates in a Rule 26(f) conference.  Certainly, if a newly-joined party can show some prejudice from being subjected to discovery soon after the party is served with a summons and complaint, the Court has the power to issue an appropriate order to protect the party's rights.  But that is not the argument which defendants have made here.  In the absence of such an argument, the Court will not quash the subpoena or issue a protective order just because there are now parties to the case who were not there when the original Rule 26(f) conference was held.

There is a potential standing question here based upon the fact that none of the parties who have moved to quash the subpoena are its targets.  Although a party generally lacks standing to seek to quash a subpoena issued to a nonparty, see Wright & Miller, Federal Practice and Procedure, Civil 3d §2459, p. 435, an exception is made if the information sought implicates a party's personal right or privilege.  See Hendricks v. Total Quality Logistics, LLC, 275 F.R.D. 251, n.1 (S.D. Ohio 2011).  The Lesters do not dispute that the exception applies here, where the information sought from the non-party consists of defendants' banking records.  (Doc. #87 at 3).  This Court agrees that

-5-

defendants have standing to file a motion to quash the subpoena issued to Home Loan.  See Riding Films, Inc. v. John Does, No. 2:13-cv-46, 2013 WL 3322221, at *4 (S.D. Ohio July 1, 2013)(noting that personal rights or privileges supporting a claim of standing have been recognized with respect to bank records).  It now turns to the merits of defendants' arguments.

As this Court noted previously, the pleadings reflect a significant dispute concerning who actually sold the used car to the Lesters, or, more accurately, who can properly be held liable for the Lesters' various claims against the seller.  See Opinion and Order of August 12, 2013, Doc. #78, at 1.  In opposing the motion to quash, the Lesters argue that "[t]he documents sought will lead to information that will verify or disprove the existence of transactions and the operation of Wow Car Company through accounts other than those directly in the name of Wow Car Company and Hartzler."  (Doc. #87 at 4).  In other words, the Lesters claim that the information sought is relevant to the joint venture, alter ego, and successor liability allegations in the second amended complaint.

There is no question that bank records may well contain information relating to these types of claims.  See, e.g., Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co., No. 90-2531, 1991 WL 152302 (E.D. Pa. Aug. 2, 1991) (finding that the requested bank documents were relevant and "may provide further evidence of the alter-ego status of the [defendant corporations]").  Consequently, the information sought from Home Loan is relevant to establish the financial relationships between defendants, and that such information could lead to a determination of the individual, entity, or entities responsible for selling the vehicle to the Lesters.  Because the discovery sought is relevant on its face to claims in the second amended complaint, or is, at the least, reasonably calculated to lead to the discovery of

evidence relevant to those claims, defendants have "the burden to
establish lack of relevance." Hendricks, 275 F.R.D. at 253.
Defendants have not met that burden.

What defendants are really arguing is not that the documents
which the Lesters have subpoenaed are irrelevant to their joint
venture or alter ego claims, but rather that discovery on such
claims is premature - that is, until the Court decides if these
claims can survive the motion to dismiss, the Lesters should not
be allowed to pursue discovery on these claims.  That is coupled
with an argument that the information is sensitive and the
discovery is intrusive.  Defendants are, in essence, asking this
Court to stay discovery pending determination of their pending
motion to dismiss.

A stay of discovery for any reason is a matter ordinarily
committed to the sound discretion of the trial court.  See
Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir.
1981).  In ruling upon a motion for a stay, the Court is required
to weigh the burden of proceeding with discovery upon the party
from whom discovery is sought against the hardship that would be
worked by a denial of discovery.  See Marrese v. American Academy
of Orthopedic Surgeons, 706 F.2d 1488, 1493 (7th Cir. 1983).
Additionally, the Court is required to take into account any
societal interests that are implicated by either proceeding or
postponing discovery.  See id.  When a stay, rather than a
prohibition, of discovery is sought, the burden upon the parties
requesting the stay is less than if they were requesting a total
freedom from discovery.  See id.

The argument that discovery should be stayed pending the
resolution of a dispositive motion is typically unpersuasive.
See, e.g., Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D.
Cal. 1990) (stating that if the Federal Rules of Civil Procedure
had contemplated that a pending dispositive motion would stay

-7-

discovery, they would contain a provision to that effect).  This
Court has often observed that the occasions when it has granted
such a stay are few, arising where there are issues of immunity
from suit, or a narrow legal issue that is evaluated easily in
order to determine whether the dispositive motion has merit.

Despite the fact that stays of discovery during the pendency
of dispositive motions are rarely granted, the Court does
consider each such motion on its individual merits.  In Heartland
Jockey Club Ltd. v. Penn National Gaming, Inc., 2009 WL 5171829,
at *4 (S.D. Ohio Dec. 21, 2009), this Court noted that it:

> takes seriously its obligation to manage discovery and
> recognizes that there are cases where the plaintiff's
> claim is so tenuous, and the potential injury to either
> private or societal interests from unfettered discovery
> is so great, that the Court must limit or preclude
> discovery in order to strike the proper balance between
> the competing interests involved.

Id.  That does not appear to be the case here, and defendants
have not really argued that it is.  Rather, whether the Lesters
properly assert a joint venture claim or whether the principal
parties are ultimately liable are not issues that are resolved
easily in order to determine whether the motion to dismiss will
likely be granted.  Consequently, and in the exercise of its
discretion, the Court will not stay discovery pending a
resolution of the motion to dismiss.

Defendants do make a valid point about the sensitivity of
some of the information subpoenaed.  Usually, however, that is
not a reason to preclude discovery altogether (unless the
potential for harm to the defendants outweighs the potential
benefit to the plaintiffs), but may justify restrictions on the
use and dissemination of the information.  That is something the
parties are free to consider, but it does not justify quashing
the subpoena.

### III. Conclusion

For the reasons set forth above, the Lesters' motion to quash the subpoena and/or for a protective order is denied. (Doc. #81).  The requested documents shall be produced within fourteen days of the date of this order.

### IV. Procedure for Seeking Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge