UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ZACHARY AND BRANDI LESTER,

    Plaintiffs,

v.

WOW CAR COMPANY, LTD, et al.,

    Defendants.

Case No. 2:11-cv-850
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on the plaintiffs' objection to the Magistrate Judge's Opinion and Order granting in part and denying in part their motion for leave to amend their complaint (ECF No. 79), and on the defendants' motion to dismiss. (ECF No. 82.) For the reasons that follow, the Court **SUSTAINS** the plaintiffs' objection and **GRANTS IN PART AND DENIES IN PART** the defendants' motion to dismiss.

### I. BACKGROUND

As more fully set forth in this Court's Opinion and Order filed on May 16, 2012, the plaintiffs in this case, Zachary and Brandi Lester, bought a used car which did not live up to their expectations. The Lesters returned the car to the seller twice within the first week they owned it, and the engine blew six days after the purchase. The plaintiffs sought relief both from the seller (and there is some dispute about who that was), a finance company, and a company from which they had purchased a warranty. That latter party, Coast to Coast Dealer Services, was dismissed in the May 16, 2012 order, and the finance company, Columbus Finance, was subsequently dismissed by stipulation. The remaining defendants were Wow Car Company, Ltd. ("Wow

Ltd.") and Amy Hartzler dba Wow Car Company ("Hartzler").

On June 14, 2013, the Lesters moved to file a second amended complaint, proposing to add as defendants Max R. Erwin, Sr. dba Wow Car Company ("Erwin"), Mid-Ohio Motor Funding Group ("Mid-Ohio"), the Hartzler-Erwin Group LLC ("Hartzler-Erwin"), and Marmax Enterprises LLC ("Marmax"), all of whom, the Lesters assert, are associated in some way with Wow Ltd. and/or Hartzler, and to assert six different causes of action against the new defendants. (ECF No. 68.) The Magistrate Judge granted in part and denied in part the Lester's request. (ECF No. 78.) On August 26, 2013, the Lesters filed an objection to a portion of the Magistrate Judge's decision. (ECF No. 79.) That objection has not been opposed.

On September 9, 2013, Defendants' filed a motion to dismiss certain claims in the second amended complaint. (ECF No. 82.) That motion is fully briefed. (ECF Nos. 88, 91.)

## II. PLAINTIFFS' OBJECTION

### A. Standard

28 U.S.C. § 636(b)(1)(A), requires this Court to apply a "clearly erroneous or contrary to law" standard of review for decisions of magistrate judges on nondispositive motions. *See also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). Federal courts have typically characterized motions to amend as non-dispositive. *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) ("The district judge correctly held that the magistrate judge's denial of [plaintiff's] motion to amend his complaint was non-dispositive, subject only to review for clear error.")

2

### B. Analysis

In the Lester's objection, they

> specifically contest that supplemental [Ohio Consumer Sales Practices Act ("OCSPA")] claims brought against new defendant Max Erwin, Sr. would be barred by the statute of limitations, because the statute of limitations has not run on that supplemental claim, which the Magistrate [Judge] did not address.

(Objection at 2.) The Lester's argument is well taken.

The statute of limitations under the OCSPA is two years from the "occurrence" of the violation. Ohio Rev. Code § 1345.10(C). "The statute of limitations commences to run from the date of the occurrence of the violation, which is not necessarily the date of any underlying transaction." *See Varavvas v. Mullet Cabinets, Inc.*, 185 Ohio App.3d 321, 326 (Ohio Ct. App., 5th Dist. 2009) (citations omitted). "[T]he 'General Assembly explicitly recognized that a CSPA violation may occur before, during, or after the underlying consumer transaction." *Id.* at 326–27 (citing Ohio Rev. Code §§ 1345.02(A) and R.C. 1345.03(A)). The Lesters allege that the website of Erwin's company, the Wow Car Company, contained false and deceptive advertising through at least 2012, and Wow, Ltd. had the same through at least March of 2013. Thus, the violations were alleged to have occurred in 2012 and 2013, respectively, and the statute of limitations have not passed on those alleged claims.

Accordingly, the Court **SUSTAINS** the plaintiffs' objection and hereby amends the second amended complaint in accordance with this decision.

### III. DEFENDANTS' MOTION TO DISMISS

### A. Standard

In evaluating a complaint to determine whether it states a claim upon which relief can be

3

granted, the Court must construe it in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

## B. Analysis

The defendants seek dismissal of the Lester's claims for express and implied warranties and their claim filed against the newly added defendants under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"). The defendants also move for dismissal of Erwin because he is allegedly not a joint venturer with Hartzler; dismissal of Wow Ltd. because it is not a successor corporation to Hartzler for the purpose of liability under TILA; and dismissal of Erwin, Mid-Ohio, Hartzler-Erwin, and Marmax because they are not "alter egos" of Hartzler or Wow Ltd.

### 1. Joint Venture

The plaintiffs have asserted liability on the part of Erwin under the theory that Erwin participated with Hartzler in a "joint venture" to sell the vehicle at issue in this case. Under Ohio law, a joint venture is a partnership established for the purposes of a single business enterprise. *Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir.1996). The essential elements of a joint venture partnership are:

4

> 1. a joint contract;
>
> 2. an intention to associate as joint venturers;
>
> 3. community of interest and control, including contributions to the joint venture;
>
> 4. the mutual right to direct and control the purpose of the joint venture; and
>
> 5. an agreement for the division of profits and losses-jointly, not severally.

*Blessing v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 244 F. App'x 614, 619 (6th Cir. 2007)

The defendants move for dismissal of any claim of liability on Erwin's part based on an alleged joint venture, arguing that:

> The allegations in Plaintiffs' Complaint, even if true, confirm there was no joint venture between Hartzler and Erwin as a matter of law. Plaintiffs do not allege that Hartzler and Erwin agreed to share all of the profits <u>and</u> losses associated with the vehicle, and do not allege that Hartzler and Erwin intended to associate as joint venturers. *See* Second Amended Complaint at ¶¶ 8-14 & 46. These are elements required to state a joint venture claim, and they are wholly absent from Plaintiffs' complaint.

(Mot. to Dismiss at 6.) The defendants rely upon *Blessing*, *supra*, for the proposition that the plaintiffs' failure to expressly allege each of the elements of a joint venture is fatal to their claim of a joint venture between Erwin and Hartzler. This Court, however, disagrees.

Under *Twombly* and *Iqbal*, the plaintiffs were not required to provide a formulaic recitation of each element of joint venture, but instead were required to allege sufficient factual matter, accepted as true, to allow this Court to draw the reasonable inference that Erwin and Hartzler engaged in a joint venture. *Blessing* does not require more. In that case, the court did

5

not uphold the trial court's dismissal of a claim because the plaintiff did not expressly allege each element of a joint venture. Instead, the court upheld the dismissal because the plaintiff failed to allege sufficient facts to support a reasonable inference that the parties engaged in a joint venture. *See Blessing*, 244 F. App'x at 620 ("Considering the essential elements of a joint venture partnership under Ohio law, the MOA language relied on by plaintiffs simply cannot reasonably be read as creating a joint venture . . . ."). In the instant action, however, the Lesters have plead sufficient factual matter to present a plausible claim that Hartzler and Erwin engaged in a joint venture.

Specifically, the Lesters allege that in 2009, Hartzler and Erwin planned the opening of Wow Car Company, and that they agreed to combine their efforts, property, money, skills and knowledge to operate the business. (Second Am. Compl. ¶¶ 10, 13.) They further allege that Hartzler obtained the Motor Vehicle Dealer's License, and Hartzler, Hartzler's father, and Erwin financed the purchase of cars for sale with Erwin financing more than 50% of the inventory. *Id.* ¶ 15. Additionally, the Lesters aver that the parties had an agreement that Erwin was to cover the operating expenses and teach Hartzler how to buy cars and that Hartzler and Erwin agreed to split profits based partially on who financed the vehicle, with Erwin also being paid additional fees generated from each sale. *Id.* ¶¶ 17, 46-48. Finally, they allege that Erwin and Hartzler had discussions contemplating that at some point Hartzler would branch out and open a new dealership, and that Erwin would take over Wow Car Company. *Id.* ¶¶ 52–53.

These allegations are sufficient for the Court to draw the reasonable inference that Hartzler and Erwin intended to engage in and carry out a single business adventure for joint profit, for which the parties combined their efforts, property, money, skill and knowledge. *See*

6

*Silver Oil Co. v. Limbach*, 44 Ohio St.3d 120, 122 (1989) (a party need not expressly intend to engage in joint venture; a trier of fact may infer from the evidence an intent to associate as a joint venture). Further, as the Lesters correctly point out, Ohio courts have specifically found that a reasonable inference may be made that the parties agreed to share profits *and* losses from agreements on how to divide the business and the profits. *See Vargo v. Clark*, 128 Ohio App.3d 589, 595 (Ohio Ct. App. 4th Dist. 1998) ("Members of a joint venture need not share expenses equally or expressly contract to share losses. . . . In the absence of an express agreement to share losses, a court will imply the parties intended to share losses in the same proportion as profits.") (citations omitted). *See also, Silver Oil Co.*, 44 Ohio St.3d at 123 (finding joint venture where losses were not specifically shared but expenses paid were not reimbursable under the parties' agreement, which amounted to sharing of loss.)

Therefore, the Court concludes that the plaintiffs have sufficiently plead that Erwin engaged in a joint venture with Hartzler. Accordingly, the Court **DENIES** Defendants' motion as it relates to this claim.

### 2. Truth in Lending

In their first amended complaint, the Lesters alleged claims under TILA. In their motion to file a second amended complaint, the Lesters requested permission to add a TILA claim against the newly added defendants. The defendants argued that it would be futile to permit the Lesters to bring a TILA claim against them because the statute of limitations had already run on that claim. *See* 15 U.S.C. § 1640(e) (establishing the limitations period under TILA as one year from the date of occurrence of the violation). The Lesters argued that under Federal Rule of Civil Procedure 15(c), their TILA claim relates back to the date they filed the claim against

7

Hartzler and Wow Ltd.

In his decision granting in part and denying in part the Lester's motion for leave to amend the complaint, Magistrate Judge Kemp provided an extensive, thoughtful analysis of the state of the law in this circuit on this exact issue. *See* Opinion and Order at 3–8. He concluded that the TILA "claims against the new defendants would be time-barred if asserted, and it would be futile to allow an amendment to assert them." *Id.* at 8. Therefore, the Magistrate Judge did not permit the Lesters to amend the complaint to assert a TILA claim against the new defendants. Accordingly, the Court **GRANTS** the defendants' motion to dismiss the TILA claims to the extent that the plaintiffs' have alleged them against the newly added defendants in their second amended complaint.

### 3. Warranty

The Lesters allege claims for breach of express and implied warranties. The defendants move to dismiss both claims. In their memorandum in opposition to the defendants' motion, the Lesters concede that they have failed to state a plausible implied warranty claim. With regard to an express warranty, the plaintiffs allege a claim under Ohio Revised Code § 1302.26, which provides in relevant part:

(A) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

8

The defendants argue that Exhibit B attached to the complaint[1] does not create an express warranty because it the affirmation was made by Hartzel to a third party – not to the Lesters. Exhibit B is a Coast to Coast Vehicle Service Agreement/Application completed by the Lesters. In that application, Hartzel, as the "Selling Dealer" certified that the vehicle was in "good road-worthy condition." The defendants argue that the alleged representation of Hartzler was not made to the Lesters, but to Coast to Coast, and it therefore cannot constitute an express warranty to the Lesters. While the defendants are correct that the representation made by Hartzel on the Vehicle Service Agreement/Application was made to Coast to Coast, the plaintiffs do not rely solely on this written instrument as the basis for their breach of express warranty claim.

Instead, the Lesters allege that when they were in negotiations to purchase the vehicle at issue here, "[t]he sales representative suggested the Vehicle and represented it was a good, reliable car and that . . . [p]rior to obligating themselves on the purchase of the Vehicle . . . [r]epresentatives of Wow Car Company represented that the Vehicle was a reliable vehicle in good road-worthy condition, . . . [that the] plaintiffs relied on these representations as the basis for the bargain when deciding to purchase the Vehicle . . . [and] [t]he Vehicle had mechanical deficiencies and did not conform to these representations, as the engine completely stopped functioning and the Vehicle became inoperable within six days of the purchase." (Second Am. Compl. ¶¶ 78–79, 101–107); *see also Sellers v. Morrow Auto Sales*, 124 Ohio App. 3d 543 (1997) (express warranties can be made verbally). Accepting these allegations as true, in

---

[1]This exhibit is properly considered part of the pleadings. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") (citation omitted).

9

combination with the facts alleged surrounding the purchase of the vehicle at issue, the Court finds that they state a plausible claim for breach of express warranty.

Accordingly, the Court **GRANTS** the defendants' motion to dismiss as it relates to the Lester's implied warranty claim and **DENIES** it as it relates to their express warranty claim.

### 4. Alter Ego

The plaintiffs allege that Erwin, Mid-Ohio, Hartzler-Erwin, and Marmax are alter egos of Hartzler and/or Wow Ltd., and are therefore liable to the same extent as Hartzler and/or Wow Ltd. As Magistrate Judge Kemp explained in his decision granting in part and denying in part the Lester's request for leave to file a second amended complaint:

> The alter ego doctrine developed in response to improper uses of the corporate form to commit crimes or fraud. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 287 (1993) sets out a three-part test for piercing the corporate veil, which is one way in which obligations of a corporation can be deemed obligations of individual shareholder or directors. This mechanism for piercing the corporate veil cannot be used in reverse (at least in Ohio), *see In re Zhang*, 463 B.R. 66, 80 (Bkrtcy. S.D. Ohio 2012). However, the first prong of the Belvedere test "is a restatement of the alter ego doctrine, which requires that plaintiff 'show that the individual and the corporation are fundamentally indistinguishable.'" *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005), quoting *id.* As *Taylor Steel* explains, there are a number of factors which go into the alter ego inquiry, but they relate to factors dealing with the reality of the corporation's existence as a separate entity, including the level of its capitalization, observance of corporate formalities, the keeping of corporate records, and whether the corporation was used as a facade for the business operations of the individual shareholders or directors. *Id.* Further, this theory may permit the Court to treat an individual and a corporation as essentially the same entity, and to allow someone with a claim against the individual to reach corporate assets to satisfy that claim. *See, e.g., In re Fisher*, 296 Fed. Appx. 494, 506 (6th Cir. Oct. 10, 2008) ("This court has explained . . . that veil piercing and alter ego concepts are distinct. The former asks a court to hold A vicariously liable for B's debts, while the latter asserts that A and B are the same entity and therefore liability is direct"), citing *International Union, United Auto., Aerospace and Agr. Implement Workers of America v. Aguirre*, [410 F.3d 297] (6th Cir. 2005).

10

(Opinion and Order at 9–10; ECF No. 78.)

The defendants argue that the Lester's have failed to allege sufficient facts to state a plausible "alter ego" claim. Additionally, the defendants contend that even if the claims were sufficiently plead, they are premature, which, the defendants maintain, was already determined by Magistrate Judge Kemp.

With regard to the sufficiency of the pleading, the Lesters base their argument that Wow Car Company was a mere façade for Hartzler and Erwin, and that these two defendants used their various companies as alter egos in operating Wow Car Company, on the following:

> In the [second amended complaint], the Lesters allege that Hartzler and Erwin were romantically involved and began operating Wow Car Company beginning in 2009. (SAC, at ¶[¶ 7, 9.) Harzler and Erwin had various agreements concerning the operation of Wow Car Company, but they did not actually abide by those agreements and observe business formalities. (*Id.* at [¶]11.) While Hartzler had the Motor Vehicle Dealer's license in her name, Erwin was the party who actually knew how to operate a dealership and purchase cars, and Erwin paid for all expenses. (*Id.* at [¶¶] 15-17, 42, 48.) Thus, Hartzler herself did not have adequate capitalization of Wow Car Company, and Defendants have made representations concerning the poor financial condition of Hartzler. (*Id.* at [¶] 22, 49.) Further, Mr. Erwin represented himself to customers, including Mr. Lester, as the owner of Wow Car Company. (*Id.* at [¶] 51.)
>
> In operating Wow Car Company, Hartzler and Erwin created or maintained other companies to operate and finance inventory for Wow Car Company. (*Id.* at [¶] 19.) With regard to Defendants Hartzler-Erwin Group and Mid-Ohio, Hartzler testified at her deposition that she did not really understand why these two entities were set up for business purposes when she had operated as a sole proprietorship. Hartzler owns 99% or 100% of Hartzler-Erwin Group, and the business was used as an operating account in the operation of Wow Car Company. (*Id.* at [¶] 32). The funds for Hartzer-Erwin Group areprovided by Defendant Mid-Ohio, another company which Hartzler owns either 99% or 100% of the interest in. (*Id.* at [¶¶] 27-28.) As Hartzler is effectively the sole owner of these companies, she exercises complete control over them, and uses them to operate her sole proprietorships such as Wow Car Company. (*Id.* at [¶¶] 29-35.)
>
> Defendant Marmax Enterprises is an LLC owned solely by Defendant Erwin. (*Id.* at

11

> [¶ 24.) Erwin used funds held in a Marmax bank account to purchase inventory for Wow Car Company and Wow Car Company, Ltd., such that Marmax finances the operation of Wow Car Company and Wow Car Company, Ltd. (*Id.*) Operating expenses for Wow Car Company were paid out of a Marmax bank account, and Wow did not have its own bank account with sufficient funds to cover its operating expenses. (*Id.* at [¶¶ 42-43.) Erwin exercises complete control over Marmax. (*Id.* at [¶ 26.) Ultimately, Hartzler surrendered vehicles titled in the name of Wow Car Company that were financed by Marmax to Marmax under a written Agreement to Surrender and some or all of those vehicles were ultimately re-titled in the name of Wow Car Company, Ltd., which Erwin is the sole shareholder of. (*Id.* at [¶ 56.)

(Pl. Mem. in Opp. at 3–4; ECF No. 88.) The Court finds that these allegations are sufficient to state plausible alter ego claims.

As to the defendants next argument – that Magistrate Judge Kemp already indicated that "such alter ego claims should be brought only in a separate action," the Court disagrees. (Mot. to Dismiss at 4.) While the Magistrate Judge did indicate that this type of suit (*i.e.*, one filed against alleged alter ego entities after liability is established) is "routinely filed in Ohio," he did not indicate that this type of suit should *only* be filed as a subsequent suit.

Magistrate Judge Kemp, after a thorough analysis of the issue before him, found that the Lesters were "clearly" permitted to file suit to determine these defendants' liability, leaving the issue as "whether they should be permitted to do so in the context of this case." (Opinion and Order at 12; ECF No. 78.) He continued:

> To answer that question, the Court would have to determine if the alter ego claim has accrued in the absence of a judgment against the existing defendants, and whether, even if it has, it is proper to join that claim with the underlying claims - or to do it at this stage of the case. The parties have not briefed these issues, and it would not be appropriate to address them in this order.

*Id.*

Consequently, Magistrate Judge Kemp left unresolved whether the Lester's alter ego claims should be permitted to be heard in the instant action or whether the claims are more

12

appropriately addressed in a subsequent suit. As to that question, it is undisputed that alter ego liability may be established and enforced in a subsequent case. *See e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2nd Cir. 1991) ("the previous judgment is . . . being enforced against entities who were, in essence, parties to the underlying dispute"); *Board of Trustees of Trucking Employees of N. Jersey Welfare Fund v. Gotham Fuel Corp.*, 860 F. Supp. 1044, 1051 (D. N.J. 1993) ("Courts have consistently held that the applicable statute of limitations in collection actions against an alter ego of a judgment debtor is the one governing enforcement of judgments.").

In considering the circumstances *sub judice*, the Court finds that the Lester's alter ego claims should be dismissed without prejudice to re-filing if the Lesters establish liability on behalf of the defendants against whom the remaining claims are filed in the instant action. Importantly, this case was filed over two years ago and is scheduled for trial on January 27, 2014. (Order Setting Trial Date and Settlement Conf.; ECF No. 62.) The parties have engaged in extensive discovery, which closed over five months ago. For the Lesters to pursue these alter ego claims, discovery would necessarily re-open. Further, as the defendants correctly note, the Lesters will suffer no prejudice because the statue of limitations on these derivative claims do not begin to run until a plaintiff obtains a judgment and, in any event, the defendants agree to the tolling of the period if that were necessary. Finally, the defendants have stipulated "to preserving the banking records Plaintiffs have subpoenaed, should Plaintiffs ultimately obtain a judgment against Hartzler and decide to file a case against Erwin, Hartzler-Erwin, Marmax, Mid-Ohio and Wow Ltd seeking to establish derivative liability." (Def. Reply at 2; ECF No. 91.)

Accordingly, the Court **GRANTS** the defendants' motion to dismiss without prejudice

13

the Lester's alter ego claims.

## IV.

Based on the foregoing, the Court **SUSTAINS** the plaintiffs' objection (ECF No. 79) and **GRANTS IN PART AND DENIES IN PART** the defendants' motion to dismiss (ECF No. 82). Specifically, the Court:

1. **DENIES** the motion as it relates to dismissal of Erwin for failure to sufficiently allege that he engaged in a joint venture with Hartzler.

2. **GRANTS** the motion as it relates to the purported TILA claims against Erwin, Mid-Ohio, Hartzler-Erwin, and Marmax.

3. **GRANTS** the motion as it relates to the implied warranty claim.

4. **DENIES** the motion as it relates to the express warranty claim.

5. **GRANTS** the motion as it relates to the Lester's alter ego claims, and **DISMISSING** without prejudice those claims.

**IT IS SO ORDERED.**

11-14-2013
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

14