```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

Zachary Lester, et al.,        :

         Plaintiffs,           :    Case No. 2:11-cv-00850

    v.                         :

Wow Car Company, Ltd.,         :    JUDGE EDMUND A. SARGUS, JR.
et al.,                             Magistrate Judge Kemp
                               :
         Defendants.
```

OPINION AND ORDER

This matter is before the Court to consider whether this Court's opinion and order issued on November 13, 2013 should be reaffirmed or reconsidered.  Defendants filed a motion to reconsider the order with the assigned District Judge, but, as explained below, Judge Sargus remanded the underlying discovery motion to the Magistrate Judge for reconsideration in light of his Opinion and Order of November 14, 2013.  For the reasons set forth below, the Court reconfirms the original discovery order.

I. Background

This case involves a dispute over the purchase of a used car by plaintiffs Zachary and Brandi Lester.  The Lesters returned the car to the seller twice within the first week they owned it, and the engine blew six days after the purchase.  As a result of these events, the Lesters filed a lawsuit in the Court of Common Pleas for Knox County, Ohio, which was removed to this Court on September 21, 2011.  The Lesters filed an amended complaint on July 31, 2012, and a second amended complaint on August 26, 2013.

There has been considerable debate in this case concerning who actually sold the car to the Lesters.  It appears to be defendants' position that the Lesters bought their car from Amy Hartzler, who was operating Wow Car Company as a dba.  However, the Lesters claim that Amy Hartzler and Max R. Erwin, Sr., who,

they claim have both a business and a personal relationship, operated Wow Car Company as a joint venture and that the two of them either created or maintained other businesses for the purpose of shielding that joint venture from liability. More specifically, they claim that Mr. Erwin owned or operated Wow Car Company, Ltd. ("Wow Ltd."), Wow's eventual successor, and a company called Marmax Enterprises LLC ("Marmax") as an alter ego for Wow and Wow, Ltd. and that he used that company to purchase inventory for the Wow businesses. The Lesters also allege that Ms. Hartzler owns Mid-Ohio Motor Funding Group, Ltd. ("Mid-Ohio"), which provides funding to another business owned by Ms. Hartzler, the Hartzler-Erwin Group LLC ("Hartzler-Erwin"). The Lesters claim that Hartzler-Erwin is also used to operate Wow and is an alter ego for Wow and Wow Ltd.

Consistent with the Lesters' theory that Ms. Hartzler and Mr. Erwin are using other entities for the purposes of escaping liability, the Lesters filed a second amended complaint against a number of defendants including Ms. Hartzler dba Wow, Wow Ltd., Mr. Erwin dba Wow, Mid-Ohio, Hartzler-Erwin, and Marmax. In that complaint (Doc. #80), the Lesters pleaded claims for breach of an express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, deceptive trade practices, violations of the Truth in Lending Act ("TILA"), violations of the Ohio Consumer Sales Practices Act ("OCSPA"), and alter ego.

On August 23, 2013, the Lesters served a subpoena on a non-party The Home Loan Savings Bank ("Home Loan"). That subpoena asked Home Loan to produce

> Copies of the following documents for all accounts bearing the signatory authority of, or in the name(s) of:
>
> > a) Amy Hartzler;
> > b) Max R. Erwin, Sr.;
> > c) Wow Car Company;

```
            d) Wow Car Company, Ltd.;
            e) Mid-Ohio Motor Funding Group, Ltd.;
            f) The Hartzler-Erwin Group, LLC; and
            g) Marmax Enterprises, LLC.

      1. Documents pertaining to all open or closed
      checking, savings, or other deposit or accounts in
      the name of or under signature authority of any of
      the named parties or entities, including but not
      limited to:

            a. Signature cards;
            b. Articles of Incorporation;
            c. Articles of Organization;
            d. Bank statements for the period January 1,
            2010 through the present;
            e. Applications to open bank accounts,
            whether approved or denied, and any
            supporting documentation submitted with said
            applications; and
            f. Applications to open accounts for credit,
            whether approved or denied, and any
            supporting documentation submitted with said
            applications.

      2. Records of communications you have for each of
      the named parties and entities.
```

(Doc. #81, Ex. A). On September 5, 2013, defendants filed a joint motion to quash the subpoena served upon Home Loan "and/or for a protective order forbidding the disclosure or discovery of the requested bank documents." Id. at 1.

On November 13, 2013, this Court issued an opinion and order on the joint motion to quash the subpoena and/or for a protective order. (Doc. #93). In doing so, the Court first addressed defendants' argument that the subpoena was issued in violation of Fed. R. Civ. P. 26(d). Because the Rule 26(f) report reflected that counsel for both sides met and conferred and the rule does not require a conference to be held subsequent to the filing of an amended complaint even if it joins new parties, the Court declined to quash the subpoena on that basis. Next, the Court

determined that defendants had standing to move to quash the subpoena issued to Home Loan, where the information sought from Home Loan consisted of defendants' banking records.  Finally, the Court noted that defendants were, in essence, asking the Court to stay discovery pending determination of their motion to dismiss filed on September 9, 2013.  The Court, in the exercise of its discretion, declined to stay discovery pending a resolution of the motion to dismiss.  Based upon these findings, the Court denied the joint motion to quash the subpoena and/or for a protective order.

The following day, on November 14, 2013, the District Judge issued an opinion and order addressing, <u>inter</u> <u>alia</u>, defendants' motion to dismiss.[1]  In the opinion and order, the Court first found that the Lesters sufficiently pleaded that Mr. Erwin engaged in a joint venture with Ms. Hartzler.  Accordingly, the Court denied the motion to dismiss as it related to that claim.  Next, the Court granted defendants' motion to dismiss the TILA claims against Mr. Erwin, Mid-Ohio, Hartzler-Erwin, and Marmax.  The Court also granted the motion to dismiss the Lesters' implied warranty claim, but it denied the motion as to the Lesters' express warranty claim.  As to the Lesters' alter ego claims, the Court found that those claims "should be dismissed without prejudice to re-filing if the Lesters establish liability on behalf of the defendants against whom the remaining claims are filed in the instant action."  (Doc. #94 at 13).  Thus, the Court granted the motion to dismiss the alter ego claims and dismissed

---

[1] The opinion and order also addressed whether the statute of limitations had run on the Lesters' supplemental OCSPA claims against Max Erwin, Sr., finding that the claims were brought within the relevant time period.  On this basis, the opinion and order sustained the Lesters' objection to a prior order and amended the second amended complaint in accordance with its decision.

those claims without prejudice.

On November 20, 2013, defendants filed an objection to the November 13, 2013 opinion and order. (Doc. #96). Defendants claim that because the alter ego claims against Mr. Erwin, Hartzler-Erwin, Wow, Ltd., Mid-Ohio, and Marmax have been dismissed, "the subpoenaed documents can no longer be relevant to any claim remaining in the case." Id. at 2. Consequently, defendants assert that the motion for a protective order as to the banking records of these defendants should now be granted. As to the joint venture claim against Ms. Hartzler and Mr. Erwin, defendants argue that all of the banking records and checks related to the sale of the Lesters' vehicle have been produced. Defendants argue that the "subpoena to Home Loan thus seeks documents wholly irrelevant to this case and which are not likely to lead to the discovery of admissible evidence." Id. at 3.

The Lesters oppose defendants' objection, arguing that the documents in question were found to be relevant to the joint venture and successor liability allegations, in addition to the alter ego claims. Accordingly, the Lesters maintain that defendants' banking records are relevant to establishing "a joint venture in the operation of Wow Car Company by Hartzler, Erwin, and companies that are wholly owned by Defendants and used in the operation of Wow Car Company." (Doc. #98 at 3). Plaintiffs urge that the documents are also relevant to "Wow Car Company, Ltd.'s successor status," in that "the Marmax account was used to finance the operation of Wow Car Company." Id. at 3-4.

In the reply in support of their objection, defendants reiterate their position that the banking records relate solely to the Lesters' dismissed alter ego claims and are no longer relevant given the remaining claims. More specifically, defendants argue that the banking records are not relevant to the Lesters' remaining joint venture claim and successor liability

allegations.  Defendants assert that a joint venture claim is based on a single transaction which, in this case, "is the sale of <u>one</u> vehicle to the Plaintiffs in March of 2011."  (Doc. #101 at 1).  Defendants argue that they have produced every banking document pertaining to that sale and they are entitled to the protective order as to any additional banking documents.  Defendants also assert that the second amended complaint contains no claim for successor liability and, as such, the Lesters cannot seek the banking records on this basis.  Alternatively, defendants argue that "even if there was a successor liability claim in the case, it would be subject to dismissal as premature on the same grounds as Plaintiffs' already dismissed alter ego claim."  <u>Id.</u> at 2-3.

In light of the pending objection, defendants' motion for a protective order was recommitted to the Magistrate Judge for further proceedings in light of the District Judge's ruling on the motion to dismiss.  On December 13, 2013, the Court issued an order allowing any party who wished to submit additional briefing on the motion for a protective order to do so in a supplemental brief to be filed by December 19, 2013.  (Doc. #103).  The Lesters submitted a supplemental brief on December 19, 2013.  (Doc. #104).  On December 23, 2013, defendants filed a "a brief reply in response to Plaintiffs' December 19, 2013 Supplemental brief."  (Doc. #105 at 1).

In their supplemental brief, the Lesters argue that "the requested banking records, which have already been produced by non-party The Home Loan Savings Bank, are relevant to claims in the second amended complaint, specifically, the Lester's [sic] joint venture and successor liability allegations."  (Doc. #104 at 1).  The Lesters argue that a joint venture under Ohio law is not, as defendants assert, limited to a single transaction.  Rather, the Lesters claim that allegations pertaining to a joint

venture may relate to a limited period of time, as opposed to a single transaction. As such, they argue that the banking records over time are relevant to that claim. As to their successor liability allegations, the Lesters also argue that the documents are relevant to their "claims that Wow Car Company, Ltd. is liable as the successor to the 'Wow Car Company' joint venture operated by Hartzler and Erwin." (Doc. #104 at 4). The Lesters argue that they are not required to plead "a specific, separate claim for successor liability to place such a claim before the Court," and their allegations that "Wow Car Company, Ltd. – who has been a party to this lawsuit since its inception – is liable as the successor to 'Wow Car Company'" are sufficient. Id. at 5. Based upon their argument that the banking records are "plainly relevant," the Lesters urge this Court to overrule defendants' objection. Id.

Defendants oppose the Lesters' supplemental brief, arguing that the case law relied upon by the Lesters actually supports defendants' position on joint venture and successor liability law in Ohio. Defendants reiterate their position that a joint venture claim is based on a single transaction and "not ongoing, long-term business operations." (Doc. #105 at 1). According to defendants, the single transaction involving the sale of one vehicle by Ms. Hartzler does not justify the Lesters' "attempts to delve into four years of banking records for all Defendants...." Id. at 2 (emphasis in original). Defendants also argue that the authority relied upon by the Lesters relating to their allegations of successor liability does not support entitlement to the subpoenaed information. Defendants argue that "[i]n every one of the cases cited by Plaintiffs, the plaintiff(s) . . . specifically asserted a successor liability claim." Id. (emphasis in original). Based upon these arguments, defendants again request that the Court grant their joint motion

for a protective order.

## II. Discussion

The governing issue before the Court is whether the District Judge's decision to dismiss the Lesters' alter ego claims in this case warrants reconsideration of this Court's November 13, 2013 opinion and order denying defendants' joint motion to quash the subpoena issued to Home Loan and/or for a protective order. In resolving this issue, the Court first examines whether the joint venture claim is sufficient to entitle the Lesters to the discovery of the information subpoenaed from Home Loan.

In ruling on the motion to dismiss, the District Judge examined the Lesters' joint venture claim in detail. The Court recognized that the essential elements of a joint venture partnership are:

1. a joint contract;

2. an intention to associate as joint venturers;

3. community of interest and control, including contributions to the joint venture;

4. the mutual right to direct and control the purpose of the joint venture; and

5. an agreement for the division of profits and losses-jointly, not severally.

(Doc. #94 at 5) (citing <u>Blessing v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union</u>, 244 F. Appx. 614, 619 (6th Cir. 2007)). The Court found that the Lesters alleged sufficient facts that, accepted as true, allowed it to draw the reasonable inference that Mr. Erwin and Ms. Hartzler "intended to engage in and carry out a single business adventure for joint profit, for which the parties combined their efforts, property, money, skill and knowledge." <u>Id.</u> at 6. More specifically, the Court noted:

> the Lesters allege that in 2009, Hartzler and Erwin planned the opening of Wow Car Company, and they agreed to combine their efforts, property, money, skills, and knowledge to operate the business. They further allege that Hartzler obtained the Motor Vehicle Dealer's License, and Hartzler, Hartzler's father, and Erwin financed the purchase of cars for sale with Erwin financing more than 50% of the inventory. Additionally, the Lesters aver that the parties had an agreement that Erwin was to cover the operating expenses and teach Hartzler how to buy cars and that Hartzler and Erwin agreed to split the profits based partially on who financed the vehicle, with Erwin also being paid additional fees generated from each sale. Finally, they allege Erwin and Hartzler had discussions contemplating that at some point Hartzler would branch out and open a new dealership, and that Erwin would take over Wow Car Company.

<u>Id.</u>

Defendants correctly observe that a joint venture under Ohio law may be defined as an agreement "entered into for a single transaction." <u>Busler v. D & H Mfg., Inc.</u>, 81 Ohio App.3d 385, 391 (10th Dist. 1992). Significantly, however, a joint venture under Ohio law is not limited to a single transaction. The relevant agreement may also be for a "limited period of time." <u>Id.</u> Here, the Court looked beyond the "single transaction" referred to by defendants which involved selling the vehicle at issue to the Lesters. Instead, the Court found that the joint venture alleged by the Lesters consisted of a broader agreement to operate a business to sell vehicles for a limited period of time.

The issue to be resolved by this Court is whether the information subpoenaed from Home Loan is reasonably calculated to lead to the discovery of evidence relevant to the Lesters' joint venture claim. As the Court found previously, the information sought is relevant to establish the financial relationships between defendants. The Lesters argue that the banking records

"are relevant to showing an association between Hartzler and Erwin to engage in a single business adventure, i.e. the sale of used cars for a limited period of time, for joint profit, for which they combined, inter alia, efforts, property, and money." (Doc. #104 at 3-4) (internal quotations omitted).  This Court agrees.

The Lesters rely upon Ohio Valley Bank v. Copley, 121 Ohio App.3d 197, 206 (4th Dist. 1997) in arguing that the banking records are competent, credible evidence of a joint venture. That case involved, inter alia, a challenge to the trial court's determination that Cliff Browning, a contractor, and his wife, Marie Browning, engaged in a joint venture in the construction of a residence.  Id.  The Court of Appeals found the trial court's ruling to be supported by "competent, credible testimony and evidence" showing that "Marie (1) opened the business account and was the sole authorized signer for the account, (2) wrote all checks to pay for all workers, subcontractors, and suppliers, (3) deposited money in the account from other sources for the benefit of the construction project, and (4) controlled the business records."  Id.  The Court of Appeals overruled the relevant assignment of error on this basis.

Defendants argue that Copley weighs in their favor, demonstrating that a joint venture claim is based on a single transaction.  According to defendants, the transaction in Copley involved "the construction of one home" and, in this case, the single transaction involved the sale of one vehicle. (Doc. #105 at 1) (emphasis in original).  Based upon their representation that they have produced every document relating to the sale of the vehicle, defendants urge that the subpoena seeks only irrelevant documents.

As noted above, Ohio law provides that a joint venture may be formed either for the purpose of engaging in a single

-10-

transaction or for the purpose of engaging in multiple transactions over a limited period of time.  See Busler, 81 Ohio App.3d at 391.  The latter is clearly alleged here, and the law does not limit joint venturers to associating for the purpose of engaging only in a single transaction.  See also Roberts v. Weiner, 137 Conn. 668, 671 (1951)(explaining that a general partnership "is formed for carrying on a general business, while the latter [a joint venture] is more often limited to a single transaction or *course of transactions*")(emphasis supplied).  The fact that Copley involved a single transaction does not undermine its determination that banking activity may serve as evidence of a joint venture.  Because the banking records sought are relevant on their face to the joint venture claim, defendants have the burden to establish the lack of relevance.  See Hendricks v. Total Quality Logistics, LLC, 275 F.R.D. 251, 253 (S.D. Ohio 2011).  Defendants' argument that any joint venture was necessarily limited to the sale of a single vehicle, notwithstanding the Lesters' allegations that the joint venture engaged in a course of transactions, does not satisfy that burden, and defendants have advanced no other arguments on the issue of relevance.  Accordingly, the Court will reaffirm its earlier order that these documents be produced.  Moreover, having found that the Lesters are entitled to the subpoenaed information based upon their joint venture claim, the Court need not examine their entitlement to the same information based on their allegations of successor liability.

### III. Conclusion

Based on the foregoing, this Court's November 13, 2013 Opinion and Order is reaffirmed.  If it has not already occurred, the requested documents shall be produced within fourteen days of the date of this order.

### IV. Procedure for Seeking Reconsideration

Any party may, within fourteen days after this order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge