```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION

Zachary Lester, et al.,       :

        Plaintiffs,            :    Case No. 2:11-cv-00850

    v.                         :

Wow Car Company, Ltd.,        :    JUDGE EDMUND A. SARGUS, JR.
et al.,                             Magistrate Judge Kemp
                              :
        Defendants.
```

OPINION AND ORDER

This matter is before the Court to consider a motion to compel discovery filed on February 21, 2014 by Plaintiffs Zachary and Brandi Lester.  The motion is now fully briefed.  For the following reasons, the Court grants the motion.

I. Introduction

The Court has described this case in numerous prior orders. Briefly, it involves a dispute over the purchase of a used car by plaintiffs Zachary and Brandi Lester.  The Lesters returned the car to the seller twice within the first week they owned it, and the engine blew six days after the purchase.  The Lesters then sued the seller in the Court of Common Pleas for Knox County, Ohio, and the case was removed here.  Several amended pleadings, adding new parties and new claims, have since been filed.  The most recent amended complaint names as defendants Amy Hartzler dba Wow Car Company, Wow Car Company, Ltd., Max R. Erwin, Marmax Enterprises LLC, Mid-Ohio Motor Funding Group, Ltd. and The Hartzler-Erwin Group and asserts claims for breach of an express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, deceptive trade practices, violations of the Truth in Lending Act ("TILA"), violations of the Ohio Consumer Sales

Practices Act ("OCSPA"), and alter ego.

The most recent motion to compel deals with bills of sale generated by Wow Car Company for calendar year 2010 and the first six months of 2012. The Lesters have received all of the relevant bills of sale for 2011, but claim that they need additional information in order properly to support their claim under the Truth in Lending Act that Wow charged credit customers more for warranties than it charged cash customers. Wow's refusal to produce the bills of sale, and its opposition to the motion to compel, rests primarily upon the argument that, to date, the Lesters have not come forth with any evidence to support their TILA claim. Wow also argues that, like the 2011 bills of sale, bills of sale for prior and subsequent years will not produce any relevant evidence to support that claim. The question before the Court, as in any case where the proper scope of discovery is at issue, is whether the discovery requests which the moving party seeks to enforce are "reasonably calculated to lead to the discovery of admissible evidence" - that is, evidence which would be "relevant to any party's claim or defense..." Fed.R.Civ.P. 26(b)(1).

## II. The Parties' Arguments

As the Lesters note, their TILA claim is premised upon what they believe to be pricing disparities between warranties sold to customers who paid cash for their vehicles, and those sold to customers who bought vehicles on credit. Their analysis of the 2011 bills of sale shows that slightly over 2% of Wow's cash customers purchased a warranty of any type, while approximately 12% of buyers on credit did so. The cash customers (and there were only two of them) paid either $119 or $199 for their warranties; the credit customers' median price for a warranty was $1,349.00. While this is, according to the Lesters, some evidence that Wow charged its credit customers more, it is

probably too small a sampling to show definitively that there was a "consistent" disparity between the amounts charged to different types of buyers.

Citing to Cornist v. B.J.T. Auto Sales, Inc., 272 F.3d 322, 327 (6th Cir. 2001), the Lesters point out that in order to show a TILA violation based on differential pricing, the plaintiff must provide more than "the comparison of two spot transactions" - he or she must show a "'causal connection' between the higher price and the extension of credit." Id.  One way to do so is to demonstrate a "consistent difference in the base price for cash and credit customers"; if that is done, "legitimate reasons for the individual price differences approach the vanishing point." Id. at 328.  The Court of Appeals emphasized that there were other ways to prove the same point, and that even an occasional increase in price due to the credit status of a customer was not permissible under TILA.  Id.  Nevertheless, the Lesters' avenue of proof in this case appears to involve the "consistent difference in ... price" approach, and they contend that the bills of sale are either admissible evidence as to the price differential, or reasonably calculated to lead to the discovery of such evidence.  And, because the 2011 bills of sale show so few cash sales, they worry that without the additional 18 months of records, they may not be able to prove that there was a consistent difference in the cash and credit prices for warranties, or that Wow will attack their proof as inadequate if they rely exclusively on what the 2011 bills of sale show.

Wow's response to this argument is interesting.  It does, as the Lesters fear, consist, in part, of an argument that the current evidence - the 2011 bills of sale - "does not come remotely close to establishing" a TILA violation.  Memorandum in Opposition, Doc. 110, at 2.  That is so, says Wow, because in order for it to have violated TILA, it must have charged

different prices for the same warranty contract, depending upon whether the customer paid cash or bought on credit, and that the bills of sale do not show which warranty any particular customer purchased.  In other words, the bills of sale, by themselves, may show that customers paid different prices for warranties, but they do not explain why.  One possible explanation, of course, would be the one offered by the Lesters, but another is the fact that Wow offered its customers a range of warranty providers who, in turn, offered a range of warranties, so each bill of sale might reflect the purchase of a different warranty product.  Based on what has been produced so far, Wow claims that the Lesters have "<u>no</u> evidence to support" their "outrageous" TILA claim.  <u>Id</u>. at 3.

    Responding to the Lesters' argument that <u>Cornist</u> provides legal support for a differential pricing theory, Wow asserts that, in actuality, <u>Cornist</u> turned on the fact that the plaintiff was unable to show that buying a warranty was a precondition for obtaining an extension of credit.  Wow then argues that because, in this case, the 2011 bills of sale show that the great majority of credit customers did not purchase a warranty, "it is simply impossible for Plaintiffs to prevail in this case, as there are no facts to remotely suggest that [Wow] was charging service agreement fees to customers as a condition of extending credit."  <u>Id</u>. at 5.  Based on this reading of <u>Cornist</u> and upon the argument that the bills of sale do not show details about the warranties purchased, Wow concludes that the production of additional bills of sale would not solve these problems nor move the Lesters any closer to proving a viable TILA claim.

### III.  <u>Discussion</u>

    The Court begins its analysis with a brief discussion of the difference in the parties' reading of the <u>Cornist</u> case.  The plaintiff in that case made three separate claims under TILA:

that the seller "charged increased base prices for cars to credit customers without disclosing such increased prices as finance charges, failed to disclose the distribution of document fees and service agreement fees to third parties, and assessed those fees only on credit customers without disclosing them as finance charges." Cornist, 272 F.3d at 324.  In the district court, the plaintiff presented evidence about cash and credit transactions which showed a "mark-up" (or the difference between what the seller had paid for the car and what it was sold for) which was consistently higher (and actually much higher) for credit transactions than for those based on cash.  The district court held that although the evidence showed differences in the two types of transactions, those differences were "sporadic" rather than "systematic" and that a TILA violation required proof of systematically different pricing.  It also dismissed the other two claims, which had to do with failure to disclose that certain fees were allocated in part to third parties and with an alleged assessment of an undisclosed finance charge, in the form of a document fee, to credit customers.

    The only claim raised in Cornist which is relevant to this case is the differential pricing claim.  As to that claim, the Court of Appeals said that "[a]n increase in the base price of an automobile that is not charged to a cash customer, but is charged to a credit customer, solely because he is a credit customer, triggers TILA's disclosure requirement." Id. at 327.  After discussing, as set forth above, what type of proof was needed to show a "consistent" pattern of differential pricing, the Court of Appeals held that the chart presented by the plaintiff was sufficient to advance the case beyond the summary judgment stage; even though it analyzed only nineteen cash sales, and even though that small number might be statistically insignificant, such potential insignificance could not be determined on the basis of

the record.  The Court of Appeals also pointed out that the seller might well be able to offer some explanation for why each credit sale mark-up was so large, but that "most such explanations would create genuine issues of material fact incapable of resolution on summary judgment."  Id. at 329.

Wow's argument that, under Cornist, it would be "impossible" for the Lesters to prevail on their TILA claim, focuses on the second claim made in Cornist - that a service agreement fee was charged only to credit customers.  The Court of Appeals noted that there was no evidence to support this claim and, in fact, the evidence pointed the other way; many credit customers of that seller were not charged the fee.  If the Lesters were arguing that only Wow's credit customers were charged a warranty or service agreement fee, Wow would be correct that the evidence does not appear to support such a claim, but that is simply not the TILA claim asserted in this case.  Consequently, Cornist's discussion and resolution of that claim is not pertinent here.

Since Wow's view that Cornist completely precludes the Lesters from prevailing on their differential pricing claim is incorrect, that leaves only Wow's argument that such a claim cannot be made out using only the information from the bills of sale.  That may or may not be true, but it is largely irrelevant to the question of whether the Lesters are entitled to these documents as part of discovery.  The Court is aware of no authority for the proposition that if a document does not fully prove or refute a party's claims or defenses, it need not be produced in discovery.  In fact, just the opposite is true.  Even if a particular document would not, itself, be admissible - for example, because some Rule of Evidence would preclude its admission at trial - the document is still discoverable if there is "a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence."  Vardon

Golf Co., Inc. v. BBMG Golf Ltd., 156 F.R.D. 641, 651 (N.D. Ill. 1994).

Wow's argument in opposition to the motion to compel actually demonstrates how that principle applies here. The bills of sale, Wow contends, may show differential pricing, but do not show why; the "why" involves an analysis of each warranty purchased, because each one might be different. But the bills of sale are the starting point for this analysis, because they do show that, on average (albeit, as of now, for only a handful of cash sales) that credit customers spent more for warranties than cash customers. As the Lesters note in their reply, Wow's position seems to be that there needs to be even more factual development on this point. But, as of now, the Lesters are content with the additional bills of sale. Additionally, especially in light of the comments made in Cornist about the need for statistically significant sampling, and the fact that the number of cash customers who bought warranties in 2011 is so small, the Lesters have satisfactorily shown that the additional bills of sale may assist them in proving a "consistent" pattern of differential pricing, making them a proper subject of discovery.

The Court adds these observations, which are not, of course, binding decisions of any sort. The Lesters have suggested that the need for additional discovery as to the nature of the warranties purchased by each Wow customer might be obviated by placing the burden on Wow to come forward with evidence to rebut a presumption created by the pricing difference shown on the bills of sale. That is a substantive legal ruling which cannot be made in the context of a motion to compel discovery. There may also be a problem with pursuing additional discovery into the individual warranties because the discovery cutoff has passed. However, if the Lesters have made a previous discovery request

that covers additional documents, or if they are documents which should have been identified by the defendants as part of their initial disclosures, or as a supplementation to those disclosures, that problem may not be insurmountable. All of those questions are for either another day or another judicial officer, however, and the Court does not address them further here.

## IV. Conclusion

Based on the foregoing, Plaintiffs' motion to compel (Doc. 109) is granted. The bills of sale in question shall be produced within fourteen days of the date of this order.

## V. Procedure for Seeking Reconsideration

Any party may, within fourteen days after this order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp  
United States Magistrate Judge