UNITED STATES DISRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ZACHARY LESTER, et al.,

    Plaintiffs,

                                 Case No.: 2:11-cv-850
v.                              JUDGE EDMUND A. SARGUS, JR.
                                 Magistrate Judge Terence P. Kemp

WOW CAR COMPANY, LTD., et al.,

    Defendants.

### OPINION AND ORDER

This matter is before the Court on Defendants' Joint Motion for Summary Judgment
(Doc. No. 111), Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion for
Summary Judgment and Motion for Summary Judgment ("Opposition Memorandum/Motion for
Summary Judgment") (Doc. No. 128), Plaintiffs' Motion for an Adverse Inference and Sanctions
(Doc. No. 131), Plaintiffs' Motion for Leave to File Supplemental Argument to Plaintiffs'
Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment ("Motion for
Leave to File Supplemental Argument") (Doc. No. 135), and Plaintiffs' Motion to Disregard
Depositions of Zachary Lester and Brandi Lester as Support for Defendants' Joint Motion for
Summary Judgment, Reply in Support, and Response to Plaintiffs' Motion to File Supplemental
Authority ("Motion to Disregard Depositions") (Doc. No. 137). For the reasons that follow, the
Court **GRANTS** Defendants' Joint Motion for Summary Judgment, **DENIES** Plaintiffs' Motion
for Summary Judgment, **DENIES** Plaintiffs' Motion for an Adverse Inference and Sanctions,
**GRANTS** Plaintiffs' Motion for Leave to File Supplemental Argument, and **DENIES** Plaintiffs'
Motion to Disregard Depositions.

## I. BACKGROUND

On March 9, 2011, Plaintiffs Zachary and Brandi Lester purchased a used 2001 Toyota Celica, with over 123,000 miles on it, from Wow Car Company for $5,493. The salesman told Plaintiffs that the Celica was "a good car," "was good on gas," and that "Toyotas are known to run for awhile." (Zachary Lester ("Z. Lester") Dep. at 21, 26; Doc. No. 11-3.). The salesman also told him either that it was "a small and reliable car" or that "it was one of the most reliable cars on the lot." *Id.* at 44. The Celica was sold "as is," and Wow Car Company expressly withdrew any implied warranties. Mr. Lester testified that he knew Wow Car Company did not offer any warranties, so when the salesman suggested that Plaintiffs purchase a warranty from Coast to Coast Dealer Services, Inc. ("C2C"), they did so. *Id.* at 39–40, 155–56. The cost of the warranty was $1,598.

Plaintiffs returned to Wow Car Company with the Celica twice during the first week they owned it complaining of leaking oil. A representative of Wow Car Company instructed Mr. Lester to keep oil in the Celica and offered to contact C2C for him. The representative instructed Plaintiffs to take the Celica to their preferred mechanic. Six days after purchasing the car, the engine blew. Plaintiffs allege that they submitted a claim to C2C, but that the claim was denied.

On August 18, 2011, Plaintiffs initiated this action in the Knox County Court of Common Pleas, naming as defendants Wow Car Company, Ltd. ("Wow Ltd."), Columbus Finance, Inc., and C2C. (Doc. No. 4.) On September 21, 2011, Defendants removed the action to this Court. (Doc. No. 1.)

Also on September 21, 2011, Defendant C2C filed its Motion to Dismiss and to Compel Arbitration. (Doc. No. 2.) On October 12, 2011, Plaintiffs filed a Motion for Leave to Dismiss the Action Against All Defendants Without Prejudice. (Doc. No. 14.) Plaintiffs ultimately

2

withdrew part of that motion (Doc. No. 17), leaving only their request to dismiss C2C from this action, which the Court granted (Doc. No. 26).

On July 31, 2012, Plaintiffs filed their Amended Complaint in which they named as defendants Amy Hartzler, dba Wow Car Company ("Hartzler/Wow Car Company"), Wow Ltd., and Columbus Finance, Inc. (Doc. No. 29.) Columbus Finance, Inc. filed its Motion to Dismiss (Doc. No. 41), and the parties subsequently filed a joint stipulation of dismissal of Columbus Finance, Inc. (Doc. No. 61.) The remaining defendants were Wow Ltd. and Hartzler/Wow Car Company.

On June 14, 2013, Plaintiffs moved to file a second amended complaint, proposing to add as defendants Max R. Erwin, Sr. dba Wow Car Company ("Erwin"), Mid-Ohio Motor Funding Group ("Mid-Ohio"), the Hartzler-Erwin Group LLC ("Hartzler-Erwin"), and Marmax Enterprises LLC ("Marmax"), all of whom, Plaintiffs assert, are associated in some way with Wow Ltd. and/or Hartzler/Wow Car Company. (Doc. No. 68.) The Magistrate Judge granted in part Plaintiffs' request, permitting, *inter alia*, these companies to be added as defendants. (Doc. No. 78.)

On September 9, 2013, Defendants' filed their Motion to Dismiss, directed at less than all of the claims in the Second Amended Complaint. (Doc. No. 82.) This Court granted in part and denied in part that Motion, leaving the new defendants in this action on the theory that, if liability is found on Plaintiffs' claims, these defendants may be liable as joint venturers or may be subject to successor liability. (Doc. No. 94.)

As indicated above, there are currently several motions at issue before the Court, which it will address *seriatim*.

3

## II. PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY

On May 15, 2014, Defendants timely filed their Reply Brief in support of their summary judgment motion. In that Reply, Defendants point out that Plaintiffs failed to respond to Defendants' request for summary judgment on Plaintiffs' breach of implied warranty claim, and they, therefore, abandoned that claim. (Doc. No. 132.) A week after Defendants' filed their Reply Brief, Plaintiffs filed a Motion for Leave to File Supplemental Argument. (Doc. No. 135.) In that motion, Plaintiffs ask the Court to grant them leave to supplement their Opposition Memorandum/Motion for Summary Judgment to include "case law supporting" their claim for breach of implied warranty of merchantability. *Id.* at 1. They indicate that "[i]n the flurry to complete the Memo Contra, it was not the Lesters intent to waive their argument as it pertains to Count 2 of the Second Amended Complaint, 'Breach of the Implied Warranty of Merchantability.'" *Id.* Defendants filed a response in opposition to Plaintiffs' motion. (Doc. No. 136.)

While there is no basis under the Federal Rules of Civil Procedure to permit Plaintiffs' to file their supplemental memorandum to address this claim, this Court endeavors to decide issues on their merits and, therefore, **GRANTS** Plaintiffs' Motion for Leave to File Supplemental Argument. The Court notes that Plaintiffs' mistake has necessitated another briefing from Defendants. In a move that conserved the resources of all involved, including the Court's, Defendants, in their opposition to Plaintiffs' Motion for Leave to File Supplemental Argument (Doc. No. 136), provided their Sur-Reply in the event the Court granted Plaintiffs' Motion. Consequently, in considering the parties' arguments for summary judgment, the Court will consider Plaintiffs' supplemental authority and Defendants' Sur-Reply.

4

## III. PLAINTIFFS' MOTION TO DISREGARD DEPOSITIONS

On June 2, 2014, Plaintiffs filed their Motion to Disregard Depositions, in which they point out that Defendants failed to file a Court Reporter's certification with either plaintiffs' deposition. Plaintiffs assert that "Fed R. Civ. P. 30(f) and S.D. Ohio Civ. R. 5.4(a) and 7.2(e) require that a court reporter's certification page be filed with a deposition for the deposition to be permissible evidence for the record." (Doc. No. 137 at 2.) Plaintiffs move this Court to disregard both Plaintiffs' depositions and all documents that were authenticated through those depositions. Plaintiffs make no assertion that the depositions and the documents authenticated through them are unable to be properly authenticated.

As in the case of Plaintiffs' request to supplement the summary judgment briefing, there is no Federal Rule requiring supplementation. The Court, however, notes the double irony of Plaintiffs' request. First, Plaintiffs themselves rely on their own depositions that they filed in support of their request for summary judgment and those depositions too were filed *without* a Court Reporter's certification. (Doc. No. 128-5 at 214–17; Doc. No. 128-10 at 33–36.) Second, Plaintiffs request that this Court prohibit Defendants from supplementing the record with the Court Reporter's certification – a privilege they ask the Court to permit them to enjoy by supplementing their opposition memorandum. Moreover, unlike Plaintiffs' mistake of not addressing Defendants' arguments for the Court to grant summary judgment on one of Plaintiffs' claims, Defendants' mistake does not require any additional briefing. It is a mistake easily remedied,[1] which Defendants in fact did remedy the day after Plaintiffs filed their Motion to Disregard Depositions. (Doc. No. 138.)

---

[1] Defendants do not challenge Plaintiffs' failure to attach a Court Reporter's certification to the depositions upon which they rely, which is the proper course of action in this case. That is because, under the 2010 Amendments to the Federal Rules of Civil Procedure, objections to "materials in the record including, among other things, 'depositions, documents, electronically stored information, affidavits or declarations' and the like. . . ." should only

The Court will permit Defendants the same opportunity to supplement the record that it has granted to Plaintiffs. Accordingly, the Court **DENIES** Plaintiffs' Motion to Disregard Depositions.

## IV. THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs bring claims for (A) Breach of Implied Warranty of Merchantability, (B) Breach of Express Warranty, (C) violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, ("TILA"), (D) violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq.* ("OCSPA"), (E) violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq.* ("ODTPA"), and (F) Joint Venture and Successor Liability. All parties move for summary judgment on all claims.

### A. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). "While the court should not weigh the evidence as

---

be made "[i]f the opposing party believes that such materials 'cannot be presented in a form that would be admissible in evidence[.]" *Foreword Magazine, Inc. v. OverDrive, Inc.*, 1:10-CV-1144, 2011 WL 5169384 (W.D. Mich. Oct. 31, 2011) (quoting Fed. R. Civ. P. 56(c)); *see also Coy v. Cnty. of Delaware*, 2:12-CV-00381, 2014 WL 117085 (S.D. Ohio Jan. 10, 2014) (same). Here, it is clear that Plaintiffs depositions can be presented in a form that would be admissible in evidence.

a jury would, it must analyze the evidence enough to determine whether there is an issue that 'may reasonably be resolved in favor of either party.'" *Liberty Lobby*, 477 U.S. at 250. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

## B. Implied Warranty of Merchantability

Plaintiffs assert that Defendants breached the implied warranty of merchantability when it sold them the Celica. Defendants, however, maintain that they have properly disclaimed that impliedwarranty. This Court agrees.

The Ohio Revised Code provides in relevant part that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ohio Rev. Code § 1302.29(A). Section 1302.29(B) permits a seller to disclaim an implied warranty. *See id*. ("to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous"). Further, "unless the circumstances indicate otherwise all implied warranties are excluded by expressions like 'as is.'" *Id*. § 1302.29(C).

There is no dispute that in connection with the sale of the Celica to Plaintiffs, Hartzler/Wow Car Company's salesman presented to Plaintiffs a one-page document captioned in all capital letters: "AS IS – SOLD WITHOUT WARRANTY." That document further reads:

> The seller, identified above, hereby expressly disclaims all warranties, either expressed or implied, including all implied warranties of merchantability or fitness for a particular purpose and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle.

(Z. Lester Dep. Ex. 4; Doc. No. 111-3 at 19.) That document also included a description of the Celica and another section which provides:

7

"NOTICE OF VEHICLE SOLD WITHOUT ANY WARRANTY"

> This vehicle is sold without any warranty. The purchaser will bear the entire expense of repairing or correcting any defects that presently exist and/or may occur in the vehicle unless the salesperson promises in writing to correct such defects.

(Z. Lester Dep. Ex. 4; Doc. No. 111-3 at 19.) Immediately after this disclaimer, the document

indicates in all capital letters:

> BUYER HEREBY ACKNOWLEDGES HE HAS READ, UNDERSTANDS AND ACCEPTS THE PROVISIONS OF THIS WARRANTY STATEMENT FOR THE ABOVE-IDENTIFIED VEHICLE.

> _____
> Zachary Lester

> _____
> Brandi Lester

*Id.* Plaintiffs each signed and dated the document.

This document properly disclaims the warranty of merchantability under Ohio law.

Moreover, there are no circumstances that would suggest otherwise. *See* Ohio Rev. Code §

1302.29(C). Indeed, the factual scenario here provides even more support for the

appropriateness of this Court's conclusion. That is, Mr. Lester testified he knew Hartzler/Wow

Car Company made no warranties on the Celica, which is why Plaintiffs decided to purchase the

C2C service agreement. (Z. Lester Dep. at 39–40, 51.) Mr. Lester testified:

> Q: Okay. You said he recommended you buy the extended warranty [from Coast to Coast]. Did I hear you say that correctly?

> A: Yeah.

> Q: "He," being Mr. Johnson [Hartzler/Wow Car Company salesman]?

> A: Yes.

> Q: Do you recall why he made that recommendation?

A: He just said it would be good because if anything failed or happened to the car, at least I had coverage.

Q: And without purchasing that extended warranty, you didn't have any warranties on the vehicle, correct?

A: Right.

Q: And you understood that when he told you that?

A. Yeah.

*Id.* at 39–40. Mr. Lester further testified that he and Mrs. Lester were shown, reviewed, and signed the warranty disclaimer document provided by Hartzler/Wow Car Company:

Q: Do you recall reviewing this document before you signed it?

A: Scanned over. It might have been the two that was handed to me at the same time.

Q: Okay. At the top of the document, it says, "As is sold without warranty." Do you see that?

A: Yes.

Q: Okay. And right below yours and your wife's signatures, there's a line that says "Warranty disclaimer: Sold as is." Do you see that?

A: Yes.

Q: Do you remember asking any questions about this document?

A: This is when he got into the point that it was pretty important for me to purchase the warranty.

Q: Okay. So it was while you were reviewing and signing this document that you had the conversation about getting a warranty from Coast to Coast?

A: Right.

*Id.* at 155–56.

Plaintiffs do not address the above testimony or documentation. Instead, they argue that "there is no dispute that the Lesters purchased a warranty for $1,598. . . . that the vehicles'

9

engine almost immediately blew. . . . that the Celica was never repaired. . . . [and] the warranty the Lesters purchased was never honored." (Doc. No. 135 at 2.) However, as Defendants correctly point out – "[n]o defendant in this case is a party to that service contract/warranty." (Doc. No. 136 at 1.) Plaintiffs initially named C2C as a defendant in this action. When C2C filed its Motion to Dismiss and to Compel Arbitration (Doc. No. 2), Plaintiffs moved to dismiss it as a defendant, which this Court granted (Doc. No. 26). Plaintiffs' arguments are directed at the actual warranty they purchased from C2C and have no bearing on whether Hartzler/Wow Car Company breached or properly disclaimed the implied warranty of merchantability.

The Court finds that Plaintiffs have failed to raise any genuine issue of material fact as to whether Defendants disclaimed the implied warranty of merchantability in the sale of the Celica. Accordingly, the Court GRANTS Defendants' Joint Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment on that claim.

## C. Express Warranty

Plaintiffs maintain that, regardless of whether Hartzler/Wow Car Company properly disclaimed any implied warranty, it made and breached an express warranty. In Ohio an express oral warranty, if given, prevails over an "as is" disclaimer in a purchase agreement. *Kociubuk v. Huntington Nat. Bank,* No. 64551, 1994 WL 4169, Ohio App. 8 Dist., Cuyahoga, 01-06-1994).

The Ohio Revised Code describes how an express warranty is created:

(A)(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
. . .
(B) . . . but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Ohio Rev. Code § 1302.26(A) and (B).

Thus, "[w]henever any affirmation of fact or promise relating to the goods becomes part of the basis for the bargain between parties, an express warranty is created by the seller." *Barksdale v. Van's Auto Sales, Inc.*, 62 Ohio App. 3d 724, 728 (1989) (citing Ohio Rev.Code § 1302.26(A)(1); UCC 2-313(1)(a)). However, "opinions of the sales person" are just 'puffing' or 'sales talk,'" and do not form an express warranty. *See Novak v. Main St. Motors*, 98-T-0148, 1999 WL 529530, at *2 (Ohio Ct. App. July 16, 1999).

In the case *sub judice*, Plaintiffs contend that Hartzler/Wow Car Company created an express warranty by three actions. First, Plaintiffs assert that "Wow represented to the Lesters that the Celica was in good road-worthy condition and that all covered components were in working order via the Service Agreement Application." (Doc. No. 128 at 10.) Second, "[r]epresentatives from Wow asserted that the car was reliable, good on gas, and a good car." *Id*. Third, Plaintiffs maintain that they were told that if they purchased a warranty from C2C "their motor would be protected if anything failed or happened to the car . . . [and they] were promised that should the Celica suffer a 'catastrophic failure,' such as the engine failing, the 'engine and transmission [would be] covered.'" *Id*. Plaintiffs also contend that Wow "assumed the duty" of "facilitating the warranty," which too created an express warranty. Plaintiffs' arguments are not well taken.

As to the first contention, Defendants are correct that this Court has already determined that the service contract/warranty application cannot form the basis for an express warranty claim, as the statements in the application were made to a third-party, Coast to Coast, and not to Plaintiffs. (Doc. No. 94 at 9.); *see also Roman v. Volkswagen of America, Inc.*, 2008-Ohio-2086 at ¶ 14, 2008 WL 1921717 at *3 (Ohio Ct. App. 2008) (an express warranty is created by an

"affirmation or promise made by the seller to the buyer") (citing Ohio Rev. Code §
1302.26(A)(1)).

With regard to Plaintiff's second assertion, the issue "is whether the statement or
representation made is a clear affirmation of fact and, therefore, forms a 'basis of the bargain' or
is a mere expression of opinion by the seller or the seller's representatives." *Sharon L. Batesole,
Tonya Refro v. Ralph Smith d/b/a R & R Serv. Ctr.*, S-94-020, 1995 WL 458782 (Ohio Ct. App.
Aug. 4, 1995) (citations omitted). Ohio courts have consistently held that the type of sales
statements alleged by Plaintiffs (the Vehicle was "reliable," "good on gas," and a "good car") do
not amount to an express warranty, but instead are puffing or sales talk. *See Marable v. Michael
J. Auto Sales*, 2013-Ohio-1750, 2013 WL 1820811, at *3 (1st Dist. 2013) (holding that
statements such as "the car was nice," "that it looked and ran great," and that "everything
worked" did not establish an express warranty); *Jackson v. Krieger Ford, Inc.*, 1989 WL 29351
*7 (10th Dist. 1989) (finding that oral statements by salesman that car "performed fine" and was
"good on gas" insufficient to create express warranty); *Sharon L. Batesole, Tonya Refro*, 1995
WL 458782, at *4 (6th Dist. 1995) (holding that statements by salesperson that car was "a good
car" and a "good, dependable car" were mere puffery and thus insufficient to create an express
warranty).

Plaintiffs' third argument relates to the provisions of the written warranty issued by C2C.
There is no dispute that the warranty provided what the salesman said it did, *i.e.*, coverage for the
engine and transmission in the event of catastrophic engine failure. (C2C Warranty, Ex. C to Z.
Lester Aff., Doc. No. 128-9.) Any decision by C2C that the failure was not covered by the terms
of the warranty is between Plaintiff and C2C, and indeed, this Court is not presented with any

evidence in this regard. C2C's alleged decision to deny Plaintiffs' claim cannot provide the basis for an express warranty between any defendant in this action and Plaintiffs.

Finally, Plaintiffs offer no law to support their claim that Hartzler/Wow Car Company's actions of contacting C2C for Plaintiffs and suggesting that they keep oil in the car until they reached C2C somehow created an express warranty. Under Ohio law, the alleged promise or affirmation of fact upon which an express warranty is based must have become "part of the basis of the bargain." Ohio Rev. Code § 1302.26(A). Here, the Celica had already been purchased by Plaintiffs when the representative of Harzler/Wow Car Company contacted C2C and made suggestions and/or gave directions to Plaintiffs, which prevents any statements he made from becoming part of the basis for the purchase of the Celica.

The Court concludes that, even when viewing the evidence in the light most favorable to Plaintiffs, no reasonable jury could return a verdict in their favor on their express warranty claim. Thus, the Court **GRANTS** Defendants' Joint Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment on that claim.

**D. Truth in Lending Act**

Plaintiffs allege that Defendants violated TILA because: (1) the $250 documentation fee Hartzler/Wow Car Company charged them should have been included in the finance charge for their loan on the Celica; (2) Hartzler failed to disclose she was retaining a portion of the fee for the C2C warranty; and (3) the $1,099 Hartzler/Wow Car Company did retain from the cost of the C2C warranty should have been included in the finance charge for their loan. Defendants argue, among other things, that Plaintiffs' TILA claim is barred by the statute of limitations. This Court agrees.

A TILA claim must be filed within "one year from the date of occurrence of the violation." 15 U.S.C. § 1640(e). In its decision that jointly addressed the Motion to Dismiss of Erwin, Hartzler-Erwin, MarMax and Mid-Ohio and Plaintiffs' Objection to the Magistrate Judge's Opinion and Order that granted in part and denied in part their Motion for Leave to Amend their Complaint, this Court upheld Magistrate Judge Kemp's determination that Plaintiffs' TILA claim against those defendants is time-barred. (Doc. No. 94.) The Court explained:

> In his decision granting in part and denying in part the Lester's motion for leave to amend the complaint, Magistrate Judge Kemp provided an extensive, thoughtful analysis of the state of the law in this circuit on this exact issue. *See* Opinion and Order at 3–8. He concluded that the TILA "claims against the new defendants would be time-barred if asserted, and it would be futile to allow an amendment to assert them." *Id.* at 8. Therefore, the Magistrate Judge did not permit the Lesters to amend the complaint to assert a TILA claim against the new defendants.

*Id.* at 8.

Hartzler/Wow Car Company argues that the same conclusion applies to Plaintiffs' claim against it is barred as well. Plaintiffs do not dispute that they failed to timely file their TILA claim against Hartzler/Wow Car Company. Instead, they contend that Wow Ltd. can still be liable for Hartzler/Wow Car Company's alleged TILA violations under a successor liability theory, even though the TILA claim against Hartzler/Wow Car Company is time-barred. (Doc. No. 128 at 18) (asserting, without citation to any supporting authority, that the "claim is not time-barred because Wow Ltd. has successor liability for the bad actions of[Hartzler/Wow Car Company]" ).

More specifically, Plaintiffs contend that, in Ohio, there are exceptions to the general rule against successor liability, which they set out. *Id.* at 22. Plaintiffs' focus on the exceptions to the general prohibition against successor liability, however, misses the mark. As Defendants

14

correctly argue, because Plaintiffs' TILA claim is untimely, there is no liability to transfer. That is, if the predecessor is not liable for the harm, which is the case here, then there can be nothing to transfer to the successor. Thus, the fact that Ohio provides exceptions to the general rule against successor liability is of no moment to the Court's analysis. *See e.g., City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 290 (N.D. N.Y. 2012) (holding that there was no liability to transfer because the claims against the predecessor were time-barred).

The Court finds that the facts here do not present an issue that may reasonably be resolved in favor of either party, and instead show that there is no material dispute that Plaintiffs' TILA claim is untimely. Accordingly, the Court **GRANTS** Defendants' Joint Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment on Plaintiffs' TILA claim.[2]

### E.  Ohio Consumer Sales Practices Act

Plaintiffs contend that they are entitled to summary judgment on their OCSPA claim because (1) Hartzler/Wow Car Company's TILA violations also constitute violations of the OCSPA, (2) Hartzler/Wow Car Company failed to display the Buyer's Guide in the Celica in violation of a Federal Trade Commission ("FTC") rule, and (3) the "Wow Car Company Ltd.'s website perpetrated an unfair and deceptive act . . . by tricking consumers such as the Lesters

---

[2] The Court notes that Plaintiffs' TILA claim is the only federal claim before it. "[T]he usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment." *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001). However, in certain cases, the overwhelming interests in judicial economy may still allow a district court to properly exercise its discretion and decide pendent state law claims once the federal claim is dismissed before trial. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the values of judicial economy, convenience, fairness and comity." *Thurmond v. Cnty. of Wayne*, 447 F. App'x 643, 651 (6th Cir. 2011) (citing *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010)). Considering those factors, the Court finds that they weigh in favor of its exercise of supplemental jurisdiction. In the instant action, there is a substantial similarity between the predicate facts necessary for the resolution of both the federal and the state law claims, discovery is closed, summary judgment briefing is complete, and, as can be seen by the fact that this case was removed to this Court nearly three years ago and there are almost 140 docket entries, substantial judicial resources have been expended in this action. To remand this case to state court at this point would, undoubtedly, cause it to expend similar resources. Consequently, the Court finds that this is the more unusual case in which it will discretionarily exercise its supplemental jurisdiction over Plaintiffs' state law claims.

into thinking [Hartzler/Wow Car Company] And Wow Ltd. were family businesses, when they are not." (Doc. No. 128 at 18–20.) Plaintiffs' arguments are not well taken.

As discussed *supra*, Plaintiffs' TILA claim fails. Thus, TILA liability cannot form the basis of Plaintiffs' OCSPA claim. With regard to Plaintiffs' other contentions, "[t]he [O]CSPA prohibits suppliers from committing an 'unfair or deceptive act or practice' in connection with a consumer transaction . . . ." *Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App. 3d 326, 334 (2009) (citing Ohio Rev. Code § 1345.02(A)).

Plaintiffs arguments concerning Wow Car Company Ltd.'s website cannot form the basis of their OCSPA claim because, *inter alia*, they do not relate to events that were "in connection" with *the* consumer transaction at issue here. Under the express provisions of the OCSPA, a violative act must be done "in connection with" the consumer transaction at issue. Ohio Rev. Code § 1345.02(A); *see also Garner v. Borcherding Buick, Inc.*, 84 Ohio App. 3d 61, 64 (Ohio Ct. App. 1992) (" the defendant must have some connection *to the consumer transaction in question* in order to be liable as a supplier for deceptive practices which violate the Ohio Consumer Sales Practices Act") (emphasis added). In the present action, Plaintiffs make no assertion that they viewed the webpage as part of their purchasing decision. Indeed, the evidence shows that the webpage appeared on the Wow Ltd. website sometime after September 2012, a year and one-half after Plaintiffs purchased the Celica, and the only version of the webpage produced by Plaintiffs in discovery is dated March 19, 2013. (Max Erwin Affid. at ¶ 3, Ex. 1, Doc. No. 111-7; Pls' Mem. in Opp., Ex. M, Doc. No. 128-13.)

As to Plaintiffs remaining assertion, they rely on a FTC rule that requires the Buyer's Guide to be "prominently and conspicuously displayed" in a used vehicle that is for sale. 16 C.F.R. § 455.2. Defendants present uncontroverted testimony that it is their routine business

16

practice to daily, before opening, check that each vehicle on the lot has a Buyer's Guide prominently and conspicuously displayed in its window (Aff. of Eric Johnson at ¶ 5, Doc. No. 132.5), and that the Celica was checked and had a Buyer's Guide displayed in its window while it was sitting on the lot the day Plaintiffs purchased it (Aff. of Duane Aspery at ¶ 3, Doc. No. 132-8). Mr. Lester, however, testified that he did not see the Buyer's Guide in the Celica when he test drove the car. (Z. Lester Dep. at 151, Doc. No. 111-3.)

"[I]n [Ohio Revised Code §] 1345.02(C), the legislature indicated that Ohio courts 'shall give due consideration and great weight' to federal trade regulation rules, such as the FTC rule, in construing [Ohio Revised Code §] 1345.02(A)." *Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App. 3d 326, 334 (2009). The *Shumaker* court went on to explain:

> However, we are not bound to find that a technical violation of FTC rules constitutes an unfair or deceptive practice under the [O]CSPA, particularly when such an interpretation would create unreasonable results. Likewise, nothing in the statutory mandate to liberally construe the [O]CSPA requires us to adopt an unreasonable construction of the statute. In fact, we are directed to avoid such results. *See State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 543, 668 N.E.2d 903, citing R.C. 1.47(C), and *State ex rel. Brown v. Milton– Union Exempted Village Bd. of Edn.* (1988), 40 Ohio St.3d 21, 27, 531 N.E.2d 1297 (overruled on other grounds).

*Id.* 334–35.

Initially, the Court notes that Plaintiffs' and Defendants' assessments of the facts are not incompatible. There is credible evidence that the Buyer's Guide was prominently and conspicuously displayed in the window of the Celica the day that Plaintiffs purchased the vehicle. There is also credible evidence that Mr. Lester did not see it displayed during Plaintiffs' test-drive. This evidence is not contradictory. Moreover, that evidence does not support a finding that any FTC rule was violated. Under FTC regulations, the Buyer's Guide expressly need not be displayed during customer test drives. 16 C.F.R. § 455.2 ("You may remove the

form temporarily from the vehicle during any test drive, but you must return it as soon as the test drive is over.").

However, even assuming Plaintiffs' version of the facts precludes the possibility of the Buyer's Guide being in the vehicle in accordance with the FTC rule, which it does not, Ohio courts have specifically found that technical violations of the OCSPA do not automatically constitute violations of the statute. *Shumaker*, 184 Ohio App. 3d at 336 ("Applying a reasonableness standard" and finding a technical violation of an FTC rule "did not constitute a violation of the CSPA" because it had no "likelihood of inducing a state of mind in the consumer that is not in accord with the facts."). Hartzler/Wow Car Company's salesman testified that he provided the Buyer's Guide to Plaintiffs who both signed the Guide; Mr. Lester testified that he signed the Guide and received a copy of the it before he purchased the Celica (Z. Lester Dep. at 198, Ex. 5); and Mrs. Lester testified she could not recall one way or the other whether they received a copy of the Buyer's Guide, but indicated she had no reason to doubt her husband's recollection (B. Lester Dep. at 8). Thus, there is simply no dispute that Plaintiffs were shown a proper Buyer's Guide that they signed and received, which satisfies the purpose of the FTC rule of requiring the Guide to be "prominently and conspicuously displayed." Thus, applying a reasonableness standard, the Court concludes that this technical violation does not constitute an unfair or deceptive practice because, under the facts of this case, it "has no 'likelihood of inducing a state of mind in the consumer that is not in accord with the facts.'" *Shumaker*, 184 Ohio App. 3d at 336.

Consequently, the Court finds that, even when believing all of Plaintiffs' evidence and drawing all justifiable inferences in their favor, they have still failed to raise any genuine dispute as to any material fact related to their OCSPA claim. Therefore, the Court **GRANTS**

Defendants' Joint Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment on that claim.

**F. Ohio Deceptive Trade Practices Act**

Plaintiffs contend that Hartzler/Wow Car Company violated the ODTPA by misrepresenting the quality and characteristics of the Celica, failing to timely register Wow Car Company with the Ohio Secretary of State, and misleading consumers as to whether Wow Car Company and Wow Ltd. were long-standing family-owned businesses. Defendants argue that Plaintiffs have no standing to assert claims under the ODTPA because they are not commercial entities competing for business with Defendants. This Court agrees.

This Court has recently explained that, although the Ohio Supreme Court has not opined on the issue, it "predicts that the Ohio Supreme Court would dismiss Ohio Plaintiffs' ODTPA claim for lack of standing." *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 873 (S.D. Ohio 2012). The *In re Porsche* case explains that in interpreting the ODTPA, Ohio courts apply "the same analysis applicable to claims commenced under analogous federal law." *Chandler & Assoc. v. Am. Healthcare Alliance*, 125 Ohio App.3d 572, 580 (Ohio Ct. App. 1997) ("When adjudicating claims under the [ODTPA], Ohio courts shall apply the same analysis applicable to claims commenced under analogous federal law."). The analogous federal law is the Lanham Act, 15 U.S.C. § 15 U.S.C. § 1125 *et seq*. Federal courts have consistently held that individual consumers do not have standing to sue under the Lanham Act because they are not within the class of persons that the Act was designed to protect. *Made in the USA Found. v. Phillips Foods, Inc.*, 365 F.3d 278, 280 (4th Cir. 2004) ("At least half of the circuits hold (and none of the others disagree) that the second of these Lanham Act provisions, § 45, or 15 U.S.C. § 1127, bars a consumer from suing under the Act.") (citing cases from the Second, Third, Fifth, Seventh,

Ninth, and Tenth circuits). Moreover, "Section 45 of the Lanham Act states that '[t]he intent of [the Act] is . . . to protect persons engaged in [congressionally regulated] commerce against unfair competition." *Id.* at 279–80 (citing 15 U.S.C. § 1127).

*In re Porsche* concluded with a thorough and correct analysis of why it followed an Ohio appellate court, *Dawson v. Blockbuster, Inc.*, 8th Dist. No. 86451, 2006 WL 1061769, at *4 (Mar. 16, 2006) (Ohio 2006), which held that consumers do not have standing to bring a ODTPA claim, instead of *Bower v. International Business Machines, Inc.*, 495 F.Supp.2d 837, 843 (S.D. Ohio 2007).

> First, *Dawson* is well reasoned and therefore is datum for ascertaining state law, not to be disregarded unless this Court is persuaded that the Ohio Supreme Court would decide otherwise. *West*, 311 U.S. at 237. *Dawson's* holding is supported by Ohio cases that equate the ODTPA to the Lanham Act in all material respects. *See Dawson*, 2006 WL 1061769, at *4 (citing *Yocono's Rest., Inc. v. Yocono*[100 Ohio App.3d 11, 17 (Ohio Ct. App. 1994)] *and Chandler* for the proposition that courts should interpret the ODTPA in the same way that courts interpret the Lanham Act). The *Dawson* court analyzed the federal cases interpreting the Lanham Act and unequivocally ruled on the issue that is currently before this Court. *See Dawson*, 2006 WL 1061769, at *4.

> Second, the *Bower* court did not cite or mention *Dawson* and referenced only two cases, both from the Northern District of Ohio, for the proposition that consumers do not have standing under the ODTPA. *Bower*, 495 F.Supp.2d at 842 (stating that the defendants "rely exclusively" on *Chamberlain v. American Tobacco Co.*, No. 1:96–CV–02005, 1999 WL 33994451 (N.D. Ohio Nov. 19, 1999) and *Glassner v. R.J. Reynolds Tobacco Co.*, No. 5:99CV0796, 1999 WL 33591006 (N.D. Ohio June 19, 1999) for the proposition that the ODTPA does not apply to individual consumers). The court concluded that both of these cases had "limited precedential value" and declined to follow them. *Id.* In contrast to these cases, *Dawson* has significant precedential value and provides well-reasoned support for the holding that the *Chamberlain* and *Glassner* courts reached.

> Third, the *Bower* court's (as well as Ohio Plaintiffs') reliance on the ODTPA's plain language ignores the fact that numerous federal courts have interpreted the Lanham Act in a way that appears contrary to its plain language. 15 U.S.C.A. § 1125(a) (conferring standing on "any person who believes that he or she is likely to be damaged" by prohibited conduct under the Act). The *Bower* court did not address this issue and does not mention the Lanham Act in its opinion.

Finally, at least one Ohio state court and another district court in Ohio have expressly declined to follow *Bower* and have followed *Dawson* instead. *See, e.g., Blankenship v. CFMOTO Powersports, Inc.*, 161 Ohio Misc.2d 5 (Clermont Cty. Ct.Com.Pl.2011) (addressing *Bower* but adopting *Dawson's* interpretation of the ODTPA); *Robins v. Global Fitness Holdings, LLC*, 838 F.Supp.2d 631, 650 (N.D. Ohio 2012) ("The Court disagrees with *Bower* and adopts the *Dawson/Chamberlain* interpretation of the [O]DTPA."). In *Blankenship*, the court noted that the ODTPA and OCSPA "prohibit the same type of conduct" such that it makes sense that the ODTPA protects only commercial entities; to hold otherwise would render the OCSPA "superfluous." 944 N.E.2d at 776–77.

*In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d at 874 –75 (parallel citations omitted).

Since the issuance of *In re Porsche*, other cases from this Court have adopted its analysis. *See Smith v. Smith & Nephew, Inc.*, 1:13CV289, 2014 WL 934541 (S.D. Ohio Mar. 10, 2014) (holding that "this Court is persuaded by recent decisions of this Court which have held that consumers lack standing to bring a ODTPA claim"); *Gascho v. Global Fitness Holdings*, LLC, 863 F. Supp.2d 677, 699 (S.D. Ohio 2012) (noting that at least one Ohio appellate court has found that consumers lack standing under the ODTPA and judges in the Northern District of Ohio have consistently found that consumers lack standing under the ODTPA); *Allen v. Andersen Windows, Inc.*, 913 F.Supp.2d 490, 513 (S.D. Ohio 2012) ("see[ing] no reason to depart from its holding in *In re Porsche* " and dismissing consumer's ODTPA claim).

In line with these cases, this Court adopts the reasoning and holding from *In re Porsche* and concludes that Plaintiffs lack standing to assert a claim under the ODTPA. Accordingly, the Court **GRANTS** Defendants' Joint Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment on Plaintiffs' ODTPA claim.

## G. Joint Venture and Successor Liability

Plaintiffs posit that "Hartzler and Erwin via Marmax, formed a joint venture and Erwin is jointly liable for the bad acts of Wow Car Company." (ECDF No. 128 at 21.) Further, Plaintiffs maintain that "Wow Car Company, Ltd. is liable for all conduct of 'Wow Car Company' because

it is a mere continuation of 'Wow Car Company' and successor liability is proper." *Id*. at 22. It is unnecessary for the Court to determine whether any of the defendants formed a joint venture or is a proper successor subject to liability because there is no liability on behalf of any defendant.

## V. PLAINTIFFS' MOTION FOR AN ADVERSE INFERENCE AND SANCTIONS

On May 1, 2014, Plaintiffs filed their Motion for an Adverse Inference and Sanctions, which Defendants have opposed. In their motion, Plaintiffs' assert that Hartzler/Wow Car Company destroyed relevant evidence, which entitles Plaintiffs to adverse inferences at trial and to sanctions. In their motion, Plaintiffs contend that the evidence Hartzler/Wow Car Company allegedly destroyed "is relevant to the Lesters' TILA, [O]CSPA, joint venture, and successor liability claims." (Doc. No. 130 at 3.) While it seems that Plaintiffs' arguments in this motion have been rendered moot by the Court's grant of summary judgment to Defendants on all of Plaintiffs' claims, the Court addresses this motion because it wants to be clear that none of the evidence that Plaintiffs allege was destroyed was relevant in any way to the Court's analysis in this Opinion and Order.

> With regard to that request, the Sixth Circuit directs that:
>
> a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citations omitted).

As the Court explained *supra*, Plaintiffs' TILA claim was untimely. Consequently, nothing related to the merits of Plaintiffs' TILA claim is relevant to this Court's analysis of that claim. Regarding Plaintiffs' OCSPA claim, Hartzler/Wow Car Company's alleged failure to

22

display the Buyer's Guide in the Celica and Wow Car Company Ltd.'s allegedly deceptive website, none of the arguments Plaintiffs make relates to these two claims. Instead, they all relate to Plaintiffs' TILA claim, which Plaintiffs contend form a basis for their OCSPA claim. And, Plaintiffs' claims related to joint venture and successor liability are not at issue since Defendants are not liable to Plaintiffs on any claim. Accordingly, the Court **DENIES** Plaintiffs' Motion for an Adverse Inference and Sanctions.

## VI. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Joint Motion for Summary Judgment (Doc. No. 111), **DENIES** Plaintiffs' Motion for Summary Judgment (Doc. No. 128), **DENIES** Plaintiffs' Motion for an Adverse Inference and Sanctions (Doc. No. 130, 131), **GRANTS** Plaintiffs' Motion for Leave to File Supplemental Argument (Doc. No. 135), and **DENIES** Plaintiffs' Motion to Disregard Depositions (Doc. No. 137). The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

6-6-2014
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**